UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF NEW YORK

ANTHONY MAYER,

            Plaintiff,

**CIVIL COMPLAINT**

  -against-

**Civil Case No.:** 1:20-CV-0442 (LEK/DJS)

SCHENECTADY COUNTY

            Defendants.

**JURY TRIAL DEMANDED**

**PRELIMINARY STATEMENT**

1. Plaintiff, Anthony Mayer, brings this action under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq for employment discrimination based on Gender discrimination by disparate treatment, sexual harassment creating a hostile work environment, for wrongful termination, for failure to promote and for retaliation for reporting discrimination and/or opposing it.

    2.  The Plaintiff is now seeking compensatory damages, punitive damages, costs and attorney's fees for the Defendants wrongful conduct under both New York and Federal law.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff's claims are brought under the Americans With Disabilities Act, 42 U.S.C. §§12101, 12117. Supplemental jurisdiction exists under the New York Human Rights Law, Executive Law §§292 and 296 et seq.

## VENUE

4. This action properly lies in the Northern District of New York, pursuant to 29 U.S.C. § 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

5. On January 24th, 2020, the EEOC issued a "right to sue" letters, authorizing plaintiff to commence an action against Defendant within 90 days from receipt of the same. A copy of the right to sue letter is annexed hereto as Exhibit A.

6. This action is commenced within 90 days of plaintiff's receipt of the right to sue letter.

## PARTIES

7. Plaintiff, Anthony Mayer, is a citizen and resident of the United States, State of New York, Rensselaer County, residing in the City of Troy.

8. Defendant Schenectady County (herein after "Schenectady County") is a county government in New York State.

## FACTS

9. The Plaintiff Anthony Mayer is a Caucasian male who first began working for the Defendant County on October 23rd, 2017 as a Purchasing & Specifications Representative.

10. Mr. Mayer's direct supervisor Deputy Director of Purchasing Jennifer Nelson is of the opposite sex as she is a female.

## GENDER DISCRIMINATION BEGAN ON THE FIRST DAY

11. On Mr. Mayer's first day of work, as an employee for the Defendant, Supervisor Nelson made Mr. Mayer sit at a table and chair facing the wall with his back to the entrance door in the an open office area with the other staff coming and going.

12. On information and belief, no female employees were made to sit at a desk in an open area facing the wall with no privacy.

13. Shortly after Mr. Mayer's first day, Supervisor Nelson informed him that a co-worker, by the name of Janis, had filed a complaint against her (Supervisor Nelson) for harassment.

14. On February 16th, 2018 Supervisor Nelson was not in and in her absence, Mr. Mayer was appointed to the Emergency Management Response Team for purchasing and this upset supervisor Nelson and as a result Mr. Mayer was harassed more severely after this.

15. On March 1st, 2018 Mr. Mayer took a call in Director Cliff Stoodley's office per his request and answered a bid question over the phone. This prompted Supervisor Nelson to harass Mr. Mayer even more.

## PLAINTIFF COMPLAINS OF HARASSMENT TO UPPER MANAGEMENT

16. On March 1st, 2018 Mr. Mayer met with Supervisor Nelson's immediate boss, Cliff Stoodley. Mr. Stoodley acknowledged that Ms. Nelson was giving Mr. Mayer a hard time and explained she (Supervisor Nelson) obviously had psychologic problems. He stated, in form or substance, that Mr. Mayer did not have to worry about losing his job, because he had the final say in the matter.

17. On March 7th, 2018 Supervisor Nelson asked if she could have a copy of an e-mail from Janis that she had seen by looking at Mr. Mayer's monitor over his shoulder without his consent. Mr. Mayer told her that he would provide her with a copy of the email if his response was included. This e-mail was presented to the County Attorney and used as a complaint against Janis. Supervisor Nelson told the County Attorney that Mr. Mayer approached her and volunteered to give her this email. Mr. Mayer adamantly denied this mistruth.

## FURTHER DISPARITE TREATMENT AS EVIDENCE OF ANIMUS

18. On March 28th, 2018 the city police attempted to arrest Supervisor Nelson in her office on charges relating to Janis' harassment charge against her. Supervisor Nelson approached Janis later that day, and an argument ensued. Supervisor Nelson requested that he write a witness statement about that altercation. Mr. Mayer stated his back was to them and he was working and could only attest to that.

19. Mr. Mayer believes that on information and belief that none of the other female workers in the office were requested by Supervisor Nelson to make statements and provide evidence to aid her in her defense of Janis' criminal and civil charges.

20. Mr. Mayer requested a meeting with Supervisor Nelson because he was frustrated with how his job was progressing and that he lacked the information he needed to succeed. In response Supervisor Nelson stated, "I need time to digest this".

## SUPERVISOR HUMILIATES AND INVADES PLAINTIFFS PERSONAL SPACE PERVASIVELY AND DAILY

21. On May 22nd, 2018 after his request for a meeting Supervisor Nelson moved Mr. Mayer into her office with his desk physically next to hers.

22. In regard to moving his desk, Mr. Mayer asked Supervisor Nelson about the office remodeling and was told it was on hold and/or no longer happening.

23. Mr. Mayer also mentioned that he knew Janis was moving in the future and asked if could sit in her spot. Supervisor Nelson told him he could not take Janis' location after she moved.

24. After moving Mr. Mayer's desk into a very uncomfortable proximity to her desk, Supervisor Nelson began having meetings with Mr. Mayer in very close physical proximity to Mr. Mayer such that he felt that she was right on top of him.

25. Mr. Mayer was very uncomfortable with Supervisor Nelson in his space during these meetings; sitting next to him in this confined area.

26. Having his desk right next to Supervisor Nelson and the close quarters meetings made Mr. Mayer feel physically uncomfortable, like he was suffocating, and he felt demeaned, embarrassed and humiliated.

27. Mr. Mayer felt especially humiliated by Supervisor Nelson's sexual harassment and disparate treatment when his peers would routinely see him at his desk next to hers or in these meetings in a humiliating position.

28. On August 2nd, 2018 after 4 meetings, Mr. Mayer requested that Supervisor Nelson stay at her desk during these meetings. At the next scheduled meeting, Mr. Mayer and Supervisor Nelson met with Director Stoodley at his office and Supervisor Nelson started the meeting telling Director Stoodley that Mr. Mayer no longer wanted these meetings.

29. Additionally at this meeting with Director Stoodley, Supervisor Nelson requested that Mr. Mayer document every minute of his day and what he was doing. On information and belief, Supervisor Nelson did not ask any of Mr. Mayer's female coworkers to document their every day like this.

30. The other three staff employees that reported to Supervisor Nelson were female and none of them were forced to have their desk next to Supervisor Nelson or have meetings with her where she was invading their physical space. Mr. Mayer believes she singled him out for harassment based on his gender, because she did not treat the other women employees the same way. These other women employees were in positions similar Mr. Mayer and reported directly to Supervisor Nelson, but because he is a man, she made him move his desk into her office right next her desk so she could control him. This was a very humiliating experience to go through every day.

**SUPERVISOR NELSON'S PRIOR DISCRIMINATION OF MALE EMPLOYEE**

31. This was not the first time that Supervisor Nelson had singled out a male for purposes of harassment. From 2013 to 2014, Supervisor Nelson harassed Stephen Lyons, an intern from the Rockefeller College of Public affairs who was working at the county through the College's Master of Public Administration.

32. Stephen Lyons had worked directly under Assistant Purchasing Agent David Frock. David Frock left his position and Mr. Lyons then reported to the Purchasing Director Clifford Stoodley. While working under Mr. Stoodley, Mr. Lyons was entrusted to manage the purchasing department for several weeks in the role of a Deputy Assistant. In this role, his duties included directly working with County managers, emergency management, the jails food division and various businesses.

33. When Supervisor Nelson replaced Mr. Frock, she dramatically changed his duties and role. She had his phone forwarded to her office and he was stripped of nearly all his responsibilities. Mr. Lyons was reduced to remedial tasks, including putting stamps on envelopes in the mail room. Such remedial tasks were not in keeping with the purpose of a Master's Internship, whereby Mr. Lyons was expected to attain Masters level professional experience.

**COWORKER FILES DISCRIMINATION ON PLAINTIFFS BEHALF**

34. Sometime after being relocated to Supervisor Nelson's office, Mr. Mayer's co-worker Janis filed a complaint of gender discrimination against Supervisor Nelson based on the sexual harassment of Mr. Mayer, which she observed.

35. On September 22nd, 2018 Supervisor Nelson was not in the office and Mr. Mayer was working with Director Stoodley on some issues.

7

36. During this time (September 22nd, 2018), Supervisor Nelson was e-mailing Mr. Mayer all day once again asking what he was doing and what was taking up his time. Director Stoodley noticed this and instructed Mr. Mayer not to respond stating that "she is bullying you over e-mail."

37. Director Stoodley walked Mr. Mayer over to the County Attorney and stated that his job was not in jeopardy and that he would be moved out of her office. He additionally commented to Mr. Mayer that it's like he was being treated as a misbehaving student being put in front of teacher's desk.  When Supervisor Nelson learned of the meeting, she accused Mr. Mayer of initiating it.

38. On March 6th, 2019, Mr. Mayer emailed Jackie with Human Resources and County Attorney, Frank Salamone about his 1st 26th week Probation Report (Oct 2018 – March 2019 approximately).

39. The Annual Review was prepared by Supervisor Nelson and rated as "Unsatisfactory."

40.   Mr. Mayer was told to sign this report immediately, which he refused and only signed acknowledging that he received the report and not that he agreed with it.

41. Once again, Mr. Mayer was informed verbally that his job was not in jeopardy.

42. By letter dated July 19th ,2019 Mr. Mayer's bid was not renewed by Supervisor Nelson.

43. Mr. Mayer believes Supervisor Nelson gave him a bad review and chose not to renew his bid because she had an animus towards Mr. Mayer because as he is of the opposite sex.

## AS FOR THE FIRST CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT UNDER TITLE VII & NYSHRL
## AS AGAINST ALL DEFENDANTS

44. The allegation in paragraphs "1" through "43" are incorporated herein as if set forth in full.

45. Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., forbids employment discrimination on the basis of "race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e-2(a).

46. Hostile work environment is one form gender discrimination and under NYSRHL and Title VII. Title VII requires that a plaintiff show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment.

47. Here the Plaintiff alleges that he was forced to sit physically right next to Supervisor Nelson every day and that she be right over the top of him when ever they had meetings. This kind of close physical unwelcome conduct on a routine basis was sufficiently pervasive such that the Plaintiffs work conditions altered and/or the Plaintiffs workplace was permeated with the harassing conduct.

48. New York State Human Rights Law was amended in October of 2019 so that it is more similar to New York City Human Rights than Title VII. Thus, under NYSHRL, as amended, a plaintiff no longer has to show that conduct was sever or pervasive, or permeated the work place but merely has to show that he was subjected to "inferior terms, conditions or privileges of employment because of his sex." This new standard more closely mirrors New York City Human

Rights law which only requires that a plaintiff seeking to prove sexual harassment show that was "treated less well" than other employees because of his sex.

49. In this case, the various allegations of physically invading Mr. Mayer's physical space on a systematic basis and the alleged demeaning conduct directed toward Mr. Mayer based on his sex more that satisfy the burden for proving sexual Harassment under NYSHRL.

## AS AND FOR A SECOND CAUSE OF ACTION
## WRONFUL TERMINATION UNDER NY AND FEDERAL LAW

50. The allegation in paragraphs "44" through "49" are incorporated herein as if set forth in full.

51. To establish a Discriminatory termination under Title VII a Plaintiff ordinarily must show that he is a member of a protected class; (2) that he was qualified for the position in question; (3) that defendants took an adverse employment action against him; and (4) that the circumstances support an inference of discrimination on the basis of his membership in a protected class.

52. As alleged in this Complaint, Plaintiff was qualified for his non-permanent position with the County.

53. The Defendant terminate and/or did not renew or extend his nonpermanent position with the County.

54. As alleged in this complaint, Supervisors Nelson's many acts of disparate treatment of the Plaintiff, her sexually harassing conduct towards the Plaintiff and her prior gender discrimination of another male all demonstrate an animus towards men and give rise to inference of discrimination.

55. Supervisor Nelson was the Plaintiffs Supervisor and had the power to terminate the Plaintiff and she did so.

56. In the alternative, Supervisor Nelson functioned as the cats paw by influencing the decision maker to not extend or renew Plaintiffs position and/or Supervisor Nelson had more than a de minimus role in the process to decide to not renew/extend the Plaintiffs position.

57. New York State Human Rights, as amended, only requires that a Plaintiff show that he was subjected to "inferior terms, conditions or privileges of employment because of his sex." This new standard more closely mirrors New York City Human Rights law which only requires that a plaintiff seeking to prove sexual harassment show that was "treated less well" than other employees because of his sex. Unlike Title VII NYSHRL, as amended, does not require the Plaintiff to identify comparators to prove discrimination.

58. As alleged Plaintiff endured various degrees of demeaning behavior by Supervisor Nelson including, but not limited to, moving his desk right next to hers so that everyone could see and invading his physical space by conducting meetings right over him. Any one of the demeaning acts alleged herein would constitute inferior terms such that Mr. Mayer was treated "less well" than other employees at the county

## AS AND FOR A THIRD CAUSE OF ACTION
## FAILURE TO PROMOTE UNDER TITLE VII & NYSHRL

59. The allegation in paragraphs "50" through "58" are incorporated herein as if set forth in full.

60. To establish a prima facie case of Failure to promote under Title VII a Plaintiff ordinarily must show that: "(1) he is a member of a protected class; (2) he `applied and

11

was qualified for a job for which the employer was seeking applicants'; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."

61. In this case the Plaintiff alleges that he was a member of a protected class and applied for a permanent position and was declined. The Plaintiff further alleges on information and belief that the position remained opened and the employer continued to seek applicants having the Plaintiffs qualifications.

62. The employers failure to hire Plaintiff to a permanent position is a violation of NYSHRL as amended because in declining his application they subjected him to inferior terms, conditions or privileges of employment because of his sex.

## AS AND FOR A THIRD CAUSE OF ACT
## RETALIATION UNDER FEDERAL AND NY LAW

63. The allegation in paragraphs "59" through "62" are incorporated herein as if set forth in full.

64. That Mr. Mayer engaged in following protected activities for which he was retaliated against:

1) Mr. Mayer reported what he believed to be sexual harassment to Supervisor Stoodley.

2) Mr. Mayer opposed what he believed to be harassment when he asked Supervisor Nelson, in form or substance if there was any other place to move him other than right next to her seat in such a demeaning and sexually harassing way.

    3) Mr. Mayer opposed what he believed to be harassment when he told Supervisor Nelson to no longer have meetings right over and physically on top of him.

65. That the Defendants were aware of the protected activities indicated above.

66. That the Defendants terminated and/or did not to renew his temporary position and/or did hire him to a permanent position because the Plaintiff engaged in the protected activities alleged above.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (PENDENT STATE CLAIMS)

70. The allegation in paragraphs "63" through "66" are incorporated herein as if set forth in full.

71. That the conduct of the Defendant's employees as alleged in paragraphs 9 through 45 violate New York Human Rights Law§§292 and 296 et seq.

72. That as the Defendant's conduct is in violation of §§292 and 296 et seq. the Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial.

**WHEREFORE**, plaintiff respectfully requests that this court enter a judgment:

1. Declaring that the acts and practices of the agency as complained of herein are in violation of Title VII of the Civil Rights Act of 1964, NYSHRL, and constitute the basis for awarding back pay with interest, compensatory damages, other lost benefits, and such other further relief as to this Court seems just and proper.

2. Award to the Plaintiff Anthony Mayer compensatory damages in each cause of action in an amount to be proven at trial.

3. Award to the Plaintiff Anthony Mayer exemplary damages in each cause of action in an amount to be proven at trial.

4. Award plaintiff Anthony Mayer the costs, disbursements and attorney's fees for the prosecution of this matter along with such other and further relief as the Court may deem just and proper.

5. Award damages under State and Federal law in such way as to maximize the Plaintiffs possible award. In the Second Circuit various courts at their discretion have awarded all punitive damages under federal law and compensatory damages under state law. Under New York State law there is no cap on compensatory damages in sexual discrimination cases, but punitive damages are not recoverable.

DATED:

April 11, 2020                                   LAW OFFICE OF PATRICK SORSBY PLLC

By____S/_____
Patrick Sorsby
Bar Roll No.: 517840
Attorney for Plaintiff
1568 Central Avenue
Albany, NY 12205
Phone: (518) 545-4529
E-mail: sorsbylaw@gmail.com